**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ABDUL R. ALMAGHZAR,
                  *Petitioner-Appellant,*

v.

ALBERTO R. GONZALES, Attorney
General,
                  *Respondent-Appellee.*

No. 04-35863

D.C. No.
CV-04-01888-PA

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Owen M. Panner, Senior Judge, Presiding

Argued and Submitted
September 12, 2005—Portland, Oregon

Filed June 8, 2006
Amended August 3, 2006

Before: Raymond C. Fisher, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Gould;
Partial Concurrence and Partial Dissent by Judge Fisher

**COUNSEL**

Philip James Smith, Portland, Oregon, for petitioner-appellant Abdul R. Almaghzar.

Kenneth C. Bauman, Assistant United States Attorney, Portland, Oregon, for respondent-appellee Alberto Gonzales, Attorney General.

## ORDER

Respondent's Unopposed Request for Modification of the Decision is GRANTED. The opinion filed on June 8, 2006, and published at 450 F.3d 415 (9th Cir. 2006), is AMENDED as follows.

On page 422 of the opinion, the first paragraph under the subheading "B. The Merits of Almaghzar's CAT Claim" begins as follows:

> To receive the protection of the CAT, an alien must prove that it is more likely than not that the alien would be tortured if removed. 8 C.F.R. § 208.16(c)(2). An alien must establish that he or she would be tortured on account of a particular belief or immutable characteristic. *Kamalthas*, 251 F.3d at 1283. Because this a factual determination, the substantial evidence test governs our review. *Monjaraz-Munoz*, 327 F.3d at 895.

The second sentence of that paragraph is deleted, and the citation to *Kamalthas* is moved to follow the citation to 8 C.F.R. § 208.16(c)(2), so that the final paragraph now begins as follows:

> To receive the protection of the CAT, an alien must prove that it is more likely than not that the alien would be tortured if removed. 8 C.F.R. § 208.16(c)(2); *Kamalthas*, 251 F.3d at 1283. Because this is a factual determination, the substantial evidence test governs our review. *Monjaraz-Munoz*, 327 F.3d at 895.

**IT IS SO ORDERED.**

**OPINION**

GOULD, Circuit Judge:

Petitioner-Appellant Abdul Almaghzar (Almaghzar), a native and citizen of Yemen, appeals the district court's denial of his petition for a writ of habeas corpus. We construe his petition as a timely filed petition for review of a decision of the Board of Immigration Appeals (BIA).[1] In his petition Almaghzar contends (1) that the frivolous asylum application bar was erroneously applied to his asylum application, (2) that the Immigration Judge (IJ) incorrectly disregarded testimony that explained discrepancies in Almaghzar's testimony, (3) that Almaghzar was not allowed to present a claim under the Convention Against Torture (CAT),[2] (4) that Almaghzar's hearing violated his right to due process under the Fifth Amendment,[3] and (5) that the IJ erred in concluding that Almagh-

---

[1]After Almaghzar filed his habeas petition in the district court, and after the district court denied Almaghzar's petition, Congress enacted the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231. Section 106(a) of that Act makes "the circuit courts the 'sole' judicial body able to review challenges to final orders of deportation, exclusion, or removal." *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005). The REAL ID Act eliminates habeas jurisdiction under 28 U.S.C. § 2241 over final orders of deportation, exclusion, and removal. *Alvarez-Barajas*, 418 F.3d at 1052. The Act requires that all habeas petitions pending before the district courts at the time of enactment be transferred to the circuit courts, but it is silent about how habeas petitions then pending on appeal before the circuit courts should be treated. *Id*. at 1053. In *Alvarez-Barajas* we held that any such petition "should be construed as if it were a timely filed petition for review with this court." *Id*. Applying this precedent, we conclude that the substantive and procedural provisions of the REAL ID Act govern Almaghzar's claims.

[2]Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85.

[3]The Fifth Amendment reads, in relevant part, "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

zar's two prior criminal convictions were particularly serious crimes. In its reasoned opinion the BIA rejected these arguments, and we affirm.

## I

Almaghzar arrived in the United States from Yemen in November of 1992. Almaghzar filed a Request for Asylum dated December 9, 1992, in which he gave an Anaheim, California, address. In his asylum application, Almaghzar stated that if forced to return to Yemen he feared persecution from pro-Communist forces there. The Immigration and Naturalization Service (INS) denied Almaghzar's application in March of 1994. Thereafter Almaghzar retained counsel, and his case was reopened and remained pending until 1998. Sometime between 1994 and 1998 Almaghzar moved to Oregon.[4] In April of 1997 he married a U.S. citizen and filed an adjustment application. Before Almaghzar's application could be processed the marriage dissolved, and in 1998 the INS initiated removal proceedings against Almaghzar in Portland. At a hearing before the IJ on September 13, 1998, Almaghzar agreed to submit his original asylum application, which was then still pending in California, to the Immigration Court in Oregon. The parties disagree whether this submission was a new application for asylum, or was a transfer of Almaghzar's then-pending application.

On November 13, 1998, the IJ denied Almaghzar's application for asylum and withholding of removal because the IJ found that Almaghzar was not credible, and the IJ ordered Almaghzar removed to Yemen. Further, the IJ found that Almaghzar had filed a frivolous asylum application and that,

---

[4]The record does not indicate when Almaghzar moved to Oregon. His 1992 Request for Asylum listed an Anaheim, California address, the adjustment application that Almaghzar filed after he married a U.S. citizen is not in the record, and the record does not tell us where Almaghzar lived between 1994 and 1998.

as a result, he was "permanently ineligible for any benefits" under the Immigration and Nationality Act. 8 U.S.C. § 1158(d)(6). The IJ found that Almaghzar was not credible, in part because Almaghzar had told two different tales about his treatment in Yemen.[5] At the time of the IJ's decision, relief under the CAT was not available because Congress had not yet implemented the provisions of the CAT prohibiting the return of aliens to countries where they would be in danger of suffering torture.[6]

Almaghzar appealed the IJ's decision to the BIA, but while his case was pending on that appeal he was charged by the United States with one count of fraudulently trading food stamps for methamphetamine in violation of 7 U.S.C. § 2024(b) and with one count of knowingly and intentionally distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1).[7] He pled guilty to both charges on July 27, 2000,

[5]The discrepancies between his stories need not be recounted, because Almaghzar does not argue that the IJ erred in determining that the stories were inconsistent to the point that they were not credible. Nor does he contend that translation errors caused the inconsistencies. Although Almaghzar testified at his second hearing and claimed before the BIA that his affidavit and the transcript of his first hearing contained translation errors, he does not press this claim on appeal. Rather, he argues that testimony at a later hearing by Dr. Givi, a licensed clinical psychologist, explains the inconsistencies.

[6]The United States ratified the CAT in 1994. Congress implemented Article 3 of the CAT on October 21, 1998, with the Foreign Affairs Reform and Restructuring Act of 1998. Pub. L. No. 105-277, § 2242, 112 Stat. 2681-822 (codified at 8 U.S.C. § 1231 note).

[7]The indictment, filed March 1, 2000, charged Almaghzar with three counts of using "a food benefit authorization card in a manner not authorized by law" and three counts of "unlawfully and intentionally distribut[ing] methamphetamine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1)." In a superseding information filed on June 29, 2000, the U.S. Attorney charged Almaghzar with one count of using a food benefit authorization card in connection with the delivery of methamphetamine in violation of 7 U.S.C. § 2023(b), and with one count of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1).

and on October 2, 2000, Almaghzar was sentenced to thirty-seven months in federal prison. After serving his sentence he was released into the custody of the INS and detained pursuant to 8 U.S.C. § 1226(c)(1)(B).[8] The INS notified the BIA that Almaghzar had been convicted of distribution of methamphetamine, and the BIA construed this notice as a request for remand to the IJ, which the BIA granted.

The IJ, who had last conducted proceedings in this case in November 1998, then held another hearing on June 30, 2003. Almaghzar called as a witness Dr. Givi, a licensed clinical psychologist, in an effort to rehabilitate Almaghzar's earlier testimony that had been discredited by the IJ. Dr. Givi explained that as the basis for his testimony he had interviewed and observed Almaghzar, conducted "a large number of assessments," and reviewed documents from Almaghzar's attorney, including Almaghzar's pre-hearing statement, his Request for Asylum, his affidavit, the oral decision of the IJ, and Almaghzar's brief on appeal to the BIA.

Dr. Givi testified that Almaghzar suffered from post-traumatic stress disorder stemming from imprisonment and torture in Yemen and from sexual abuse suffered at a young age. Dr. Givi also testified that post-traumatic stress disorder often impairs memory and the ability to concentrate, and that these symptoms explained the inconsistencies in Almaghzar's prior testimony. Although Dr. Givi was aware of Almaghzar's conviction for distributing methamphetamine, Dr. Givi was not aware of Almaghzar's conviction for food stamp fraud. For this reason, the IJ disregarded Dr. Givi's testimony, concluding that Almaghzar's fraud conviction for his role in a complex criminal enterprise in which he had sold methamphetamine for food stamps was inconsistent with Dr. Givi's

---

[8]This statute provides, in relevant part, "The Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D)." 8 U.S.C. § 1226(c)(1)(B).

opinion that Almaghzar was incapable of complex, non-linear thinking.

At the same hearing Almaghzar offered evidence in support of his CAT claim, including reports detailing that torture does occur in Yemen. Almaghzar also testified at the hearing, offering an account of his activities in Yemen that differed from both Almaghzar's affidavit and his testimony at his first hearing. The IJ denied Almaghzar's request for asylum and for withholding of removal, found that Almaghzar had filed a frivolous application for asylum, found that Almaghzar had no valid claim under the CAT, and ordered Almaghzar removed to Yemen. Almaghzar appealed to the BIA, which affirmed the IJ's decision.

## II

On a petition for review, the BIA's decisions regarding purely legal questions are reviewed de novo, "giving deference to the BIA's interpretation unless that interpretation is contrary to the plain and sensible meaning of the statute." *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). BIA decisions regarding whether an alien is eligible for asylum must be affirmed if supported by substantial evidence. *Karouni v. Gonzales*, 399 F.3d 1163, 1170 (9th Cir. 2005). "We review the BIA's findings of fact, including credibility findings, for substantial evidence and must uphold the BIA's finding unless the evidence compels a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003). Congress has codified this deferential standard of review. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary.").

## III

We first address Almaghzar's challenge to the IJ's determination that the frivolous asylum application bar applied in this

case. The frivolous asylum application bar, *id.* § 1158(d)(6), renders an alien permanently ineligible for immigration benefits if his or her asylum application is found to be knowingly frivolous. The statute requires that an asylum applicant receive notice of the consequences of filing a frivolous application. *Id.* § 1158(d)(4)(A).[9] Under the regulations implementing the frivolous asylum application bar, an application is frivolous "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. The regulations require that a finding of frivolousness "only be made if the immigration judge or the Board is satisfied that the applicant, during the course of the proceedings, has had sufficient opportunity to account for any discrepancies or implausible aspects of the claim." *Id.* The frivolous asylum application bar applies to asylum applications filed on or after April 1, 1997. *Id.* Almaghzar does not challenge the substantive determination that his asylum application was frivolous. Rather, he argues that, because he filed his application in 1992, the frivolous asylum application bar does not apply to him. The parties dispute whether, in submitting his application to the Immigration Court in Oregon in 1998, Almaghzar filed a new application or instead transferred his application that was then pending in California.

**[1]** Aliens seeking judicial review of a final order of removal must first exhaust all available administrative remedies. 8 U.S.C. § 1252(d)(1). While before the IJ, Almaghzar never claimed to have filed his asylum application before the frivolous asylum application bar took effect—not even when the IJ warned him about the frivolous asylum application bar's potential applicability and asked whether, notwithstanding that risk, he wanted to proceed with his application. Nor did Almaghzar raise the timing issue when he challenged the IJ's application of the bar before the BIA. Accordingly, we

---

[9]Almaghzar does not dispute that he received notice of the consequences of filing a frivolous asylum application as required by 8 U.S.C. § 1158(d)(4)(A).

hold that Almaghzar has not exhausted his claim that he filed his application before the frivolous asylum application bar took effect, and we decline to review this claim.

## IV

We do not address whether the frivolous asylum application bar precludes a claim under the CAT because that was not the basis upon which the IJ and the BIA denied relief on Almaghzar's CAT claim. *See SEC v. Chenery Corp. (Chenery II)*, 332 U.S. 194, 199 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."). Instead, we review the BIA's determination that Almaghzar did, in fact, have an opportunity to present a CAT claim, and its determination that Almaghzar's CAT claim lacked merit. Almaghzar contends that both of these conclusions are in error, arguing that his second hearing was plagued by due process violations and that the substantive determination that he was not entitled to CAT relief is incorrect. We address these arguments in turn.

### A. Almaghzar's Due Process Claims

Almaghzar claims that he suffered various violations of his due process rights during his second hearing before the IJ. We address each of Almaghzar's contentions below.

[2] First, Almaghzar asserts that the IJ prevented Almaghzar from presenting evidence to support his claim under the CAT. However, the transcript of the hearing shows that Almaghzar was allowed to present evidence in support of his CAT claim. Dr. Givi testified about his psychological evaluation of Almaghzar, Almaghzar presented several reports describing torture in Yemen, and Almaghzar testified at length about the inconsistencies in his prior testimony, his activities in Yemen, and his asylum application. Because

Almaghzar was allowed to present evidence regarding his CAT claim, and because Almaghzar's presentation was not limited in any meaningful respect, we reject Almaghzar's due process claim.

**[3]** Almaghzar's second claim is that his right to due process was violated when the IJ allowed the adverse credibility determination to dictate the outcome of the CAT claim. Under *Kamalthas v. INS*, 251 F.3d 1279 (9th Cir. 2001), claims under the CAT are analytically separate from an application for asylum. *Id.* at 1283. The *Kamalthas* court held that the BIA abused its discretion when it refused to reopen Kamalthas's case, which presented a new CAT claim, when Kamalthas's asylum application had previously been denied because Kamalthas was found not credible. *Id.* at 1280. Because the elements of a CAT claim are different from a claim for asylum, the *Kamalthas* court held that the BIA erred in relying on its previous adverse credibility determination and in refusing to consider documentary evidence of torture in Kamalthas's native Sri Lanka, thus denying Kamalthas the opportunity to make a prima facie case. *Id.* at 1284.

**[4]** Here, there was no denial of consideration of the documentary evidence. Almaghzar presented additional information supporting his CAT claim, including reports detailing human rights abuses in Yemen. *Kamalthas* requires that an applicant be given the opportunity to make a claim under the CAT by introducing documentary evidence of torture, but neither *Kamalthas* nor due process requires an IJ to rely on that evidence to grant relief when the applicant is not credible. Further, the IJ specifically said that "[t]he Court has considered all of the evidence, documentary and testimonial, whether or not I specifically mention it here," and the IJ concluded that there was "no basis to find a Convention Against Torture claim." We do not interpret or extend *Kamalthas* to require more.

**[5]** Third, Almaghzar challenges the determination that Dr. Givi was not credible. This factual determination may be

overturned only if the evidence compels a contrary result. *Monjaraz-Munoz*, 327 F.3d at 895. The IJ discounted Dr. Givi's testimony after discovering that Dr. Givi did not know of Almaghzar's conviction for a scheme in which Almaghzar had distributed methamphetamine for food stamps; the IJ concluded that Almaghzar's conviction was inconsistent with Dr. Givi's contention that Almaghzar was incapable of "functioning in a linear fashion." The evidence does not compel the conclusion that Dr. Givi's testimony was credible, and we therefore will not reverse the IJ's negative credibility determination.

**[6]** Fourth, Almaghzar claims that the IJ did not consider the documentary evidence of torture in Yemen. The IJ did not specifically discuss the documentary evidence in his oral decision, apart from his general statement that he had considered all documentary and testimonial evidence, whether or not discussed. Almaghzar attacks this as "boilerplate" language, arguing that the evidence should have received "individualized consideration" as required by 8 C.F.R. § 1208.16(c)(3). That regulation, however, does not require an IJ's decision to discuss every piece of evidence; it requires only that the IJ consider all evidence. *Id.* § 1208.16(c)(3). Because there is no evidence that the IJ failed to consider Almaghzar's documentary evidence, we accept the IJ's general statement that he considered all the evidence before him.

**[7]** Finally, Almaghzar claims that the IJ conducted the second hearing in a partisan matter. He compares the IJ's conduct during the hearing to that of the IJ in *Colmenar v. INS*, 210 F.3d 967 (9th Cir. 2000), who refused to let Colmenar testify about certain critical aspects of his claims. *Id.* at 972. Even though Almaghzar's IJ expressed skepticism about how Dr. Givi's testimony could provide insight on the credibility determination, the IJ allowed Dr. Givi to testify. This distinguishes Almaghzar's claim from that presented in *Colmenar*. Although the IJ showed impatience at times, Almaghzar had ample opportunity to present his case, and the record as a

whole does not suggest that the IJ did not conduct the hearing with an open mind.

[8] In sum, the IJ did not violate Almaghzar's due process rights during the second hearing.

## B.   The Merits of Almaghzar's CAT Claim

[9] To receive the protection of the CAT, an alien must prove that it is more likely than not that the alien would be tortured if removed. 8 C.F.R. § 208.16(c)(2); *Kamalthas*, 251 F.3d at 1283. Because this is a factual determination, the substantial evidence test governs our review. *Monjaraz-Munoz*, 327 F.3d at 895. The evidence supporting Almaghzar's claim is his discredited testimony and general reports indicating that torture occurs in Yemen. Because Almaghzar's testimony was found not credible, to reverse the BIA's decision we would have to find that the reports alone compelled the conclusion that Almaghzar is more likely than not to be tortured.[10] Although the reports confirm that torture takes place in Yemen, they do not compel the conclusion that Almaghzar would be tortured if returned. Therefore, we defer to the IJ and BIA's determination that relief under the CAT is unavailable.[11]

---

[10]Jon E. Mandaville, a professor in the History Department and Middle East Studies Center at Portland State University, testified before the district court that Almaghzar was likely to be tortured upon his return to Yemen. Because we now review the BIA decision, rather than the district court decision, it is questionable whether this testimony is properly before us. However, assuming without deciding that this testimony is before us, we find it unhelpful. Professor Mandaville explicitly conditioned his conclusion that Almaghzar is likely to be tortured upon his return on the assumption that Almaghzar's testimony was truthful, which the IJ found not to be the case.

[11]The dissent argues that we should remand Almaghzar's CAT claim to the BIA under *INS v. Ventura*, 537 U.S. 12 (2002) (per curiam), and *Gonzales v. Thomas*, 126 S. Ct. 1613 (2006) (per curiam), because the dissent claims that we are deciding Almaghzar's CAT claim in the first instance.

## V

**[10]** We are without jurisdiction to review Almaghzar's claim that the IJ erred in concluding that Almaghzar's felony convictions constituted particularly serious crimes that bar him from withholding of removal. "[N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) . . . ." 8 U.S.C. § 1252(a)(2)(C).

**[11]** Nevertheless, we may review claims that an applicant's constitutional rights were violated. *Id.* § 1252(a)(2)(D). Almaghzar argues that his Fifth Amendment right to due process was violated when the IJ disregarded Dr. Givi's testimony, did not permit Almaghzar to testify about the circumstances surrounding his criminal conviction, and conducted the hearing in a partisan, adversarial manner. As discussed in the previous section, Almaghzar was allowed to present the testimony of Dr. Givi, Almaghzar's ability to present evidence was not impaired in any way, and the IJ conducted the hearing in a fair manner. We reject Almaghzar's due process challenge to the IJ's determination that Almaghzar's crimes were particularly serious.

## VI

**[12]** Almaghzar fails to present this court with evidence that compels the conclusion that the IJ and BIA erred in finding that Almaghzar and Dr. Givi were not credible. Further-

---

*Ventura* and *Thomas* require that we remand when the agency has not yet considered the issue. *See Thomas*, 126 S. Ct. at 1615; *Ventura*, 534 U.S. at 17. But we here hold that the IJ and BIA decided the merits of Almaghzar's CAT claim, with the benefit of the country condition reports Almaghzar introduced into evidence, and the IJ generally said that he had considered all evidence. Neither *Ventura* nor *Thomas* require us to remand an issue to the agency when the agency has already considered the issue.

more, Almaghzar's due process claims are without merit, as it is clear on the record that he had ample opportunity to present his CAT and asylum claims, and that the IJ was not biased. Accordingly, treating Almaghzar's habeas petition in the district court as a petition for review of the BIA decision, we agree with the denial of relief by the BIA, and the petition for review is hereby denied.

PETITION FOR REVIEW DENIED.

---

FISHER, Circuit Judge, concurring in part and dissenting in part:

Both the immigration judge (IJ) and the Board of Immigration Appeals (BIA) completely ignored our standards for adjudicating Convention Against Torture (CAT) claims as explicated in *Kamalthas v. INS*, 251 F.3d 1279 (9th Cir. 2001). The IJ committed two interrelated errors, neither of which the BIA corrected. First, the IJ uncritically imported the adverse credibility determination from the asylum context into the CAT context. Second, the IJ failed to articulate with any specificity why the country conditions evidence of torture in Yemen, along with the other evidence in the record, did not suffice to establish Almaghzar's CAT claim. Accordingly, although I concur in most of the other aspects of the majority's opinion,[1] I respectfully dissent from the majority's hold-

---

[1] Although I ultimately concur in the majority's result with respect to Almaghzar's allegations of a denial of due process because of the IJ's partiality during the 2003 hearing, I do not endorse the IJ's hostility, especially as directed towards Almaghzar's expert witness, Dr. Givi. The IJ made a snide comment about Dr. Givi being an expert in lying, blew up at Dr. Givi and badgered him on the stand without permitting him to answer the IJ's questions and implied that Dr. Givi was testifying on behalf of Almaghzar because of their shared Middle Eastern ethnicity. This behavior constituted more than mere "impatience," (op. at 8869); it was abusive and unprofessional.

ings regarding Almaghzar's CAT claim and would remand that claim to the BIA for reevaluation in light of Yemeni country conditions evidence.

Two years before Almaghzar's 2003 hearing, *Kamalthas* held that "a claim under the Convention [Against Torture] is not merely a subset of claims for either asylum or withholding of removal," but rather is an "analytically separate" claim. 251 F.3d at 1283. In a passage particularly relevant to the IJ's treatment of Almaghzar's CAT claim, *Kamalthas* stated that "[w]e are not comfortable with allowing a negative credibility determination in the asylum context to wash over the torture claim . . . ." *Id.* at 1284 (quoting *Mansour v. INS*, 230 F.3d 902, 908 (7th Cir. 2000)). *Kamalthas* further held that the BIA's failure to consider country reports attesting to the likelihood that the petitioner would be tortured if removed to Sri Lanka was reversible error and vacated the BIA's denial of a motion to reopen the petitioner's case. *See id.* "[T]he Board abuse[s] its discretion in failing to recognize that country conditions *alone* can play a decisive role in granting relief under the Convention." *Id.* at 1280 (emphasis added).

The similarities between this case and *Kamalthas* are striking. As the majority acknowledges, "[t]he IJ did not specifically discuss the documentary evidence [of torture in Yemen] in his oral decision." (Op. at 8869.) Neither did the BIA; indeed, the BIA did nothing more than note that Almaghzar had appealed the IJ's CAT ruling and then went on to summarily deny that portion of his appeal.[2] Further, just as in

---

[2]As in *Kamalthas*, the BIA did not just affirm the IJ, but wrote an opinion. Accordingly, we are bound to review the BIA's opinion in the first instance rather than the IJ's ruling. *See Albathani v. INS*, 318 F.3d 365, 373 (9th Cir. 2003) ("Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ.") (quoting *Gao v. Ashcroft*, 299 F.3d 266, 271 (3d Cir. 2002)). However, in this case, the BIA's utter lack of analysis on the CAT issue leaves us no choice but to consider the IJ's reasoning with respect to the CAT claim in order to understand the BIA's

*Kamalthas*, the IJ in this case "plainly overrelied on [his] prior adverse credibility finding." 251 F.3d at 1284. The IJ's only discussion of Almaghzar's CAT claim was a reiteration of all of the reasons he found Almaghzar not to be credible on his asylum claim:

> I also find that there's no basis to consider a claim under the Convention Against Torture because frankly, with the variety of stories that the Respondent has told, the misleading nature of his presentation about himself to the psychologist taken together with the fraud conviction that he has as well as the distribution of methamphetamine which was part and parcel to those fraud operations, that the Court does not place any credibility on any of the claims whatsoever. So there would be no basis to find a Convention Against Torture claim.

*Kamalthas* explicitly held that the BIA cannot deny relief "without recognizing the proper standard for establishing a prima facie case and giving weight to relevant country conditions," *id*.; and it abuses its discretion "when it fail[s] to state its reasons and show proper consideration of all factors when weighing equities and denying relief," *id*. (quoting *Arrozal v. INS*, 159 F.3d 429, 432 (9th Cir. 1998)). Both the IJ and the BIA failed to recognize and apply the appropriate and distinct CAT standard, to consider relevant country conditions and to state their reasons why those conditions did not support Alamghzar's claim that he could be tortured if returned to

---

reasons for affirming. *Cf. Avetova-Elisseva v. INS*, 213 F.3d 1192, 1197 (9th Cir. 2000) ("[T]he BIA's . . . phrasing seems in part to suggest that it did conduct an independent review of the record. . . . But the lack of analysis that the BIA opinion devoted to the issue at hand — its simple statement of a conclusion — also suggests that the BIA gave significant weight to the IJ's findings. In light of that ambiguity, we will also look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion.") (internal citation omitted).

Yemen. Instead, both the IJ's and the BIA's rejections of Almaghzar's CAT claim were based solely on the IJ's asylum credibility findings. The majority errs in affirming these clear failures to abide by *Kamalthas*' mandates.

Almaghzar's credibility is highly suspect — like that of young Mr. Kamalthas — and he may not be entitled to CAT relief on the merits *even if* Yemeni country reports and Dr. Givi's testimony regarding post-traumatic stress disorder are credited. Nonetheless, notwithstanding "the high bar to obtaining relief under the Convention on the merits," *Kamalthas* refused to rely on a CAT petitioner's weighty burden of proof to justify a harmless error approach to the BIA's lack of consideration of country conditions evidence. *See id.* "Indeed, proper attention to relevant country conditions might lend credence to [petitioner's] assertions of torture and cause the BIA to view them in a different light." *Id.*

Given that the Yemeni country conditions evidence in the record paints a bleak picture, the BIA's assessment of Almaghzar's CAT claim might well be similarly influenced here. The 2002 Human Rights Watch country report on Yemen states that "[t]he security forces continued to exercise wide powers and to commit abuses, including arbitrary arrest, torture, and killings of civilians with virtual impunity." The 2002 Amnesty International country report states that "[t]orture and a death in custody were reported." And the 2002 United States State Department country report states that "[m]embers of the security forces tortured and otherwise abused persons, and continued to arrest and detain citizens arbitrarily."

In any event, because neither the IJ nor the BIA addressed Yemen's country conditions, we have no idea how either the IJ or the BIA evaluated those conditions as applied to Almaghzar; all we know is that they thought him to be not credible based on his asylum-related testimony. That is not enough, per *Kamalthas*.

The majority reasons that "[b]ecause Almaghzar was allowed to present evidence regarding his CAT claim, and because Almaghzar's presentation was not limited in any meaningful respect, we reject Almaghzar's due process claim." (Op. at 8867-68.) But there is a difference between merely allowing evidence to be presented and actually considering it. This distinction animates the rationale for reviewing an IJ's decision when the BIA affirms without opinion — there is no BIA reasoning for us to review in such cases. *Cf. Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir. 1998) ("The BIA's opinion, however, cannot be mere boilerplate, and must describe with sufficient particularity and clarity the reasons for denial of asylum.") (internal quotations omitted). Indeed in this case, there is *no* BIA reasoning for us to review on Amaghzar's CAT claim, and the IJ's reasoning on CAT consists *solely* of the conclusion that Almaghzar is not eligible for relief. It is hard to see how we can exercise our duty to perform any sort of meaningful review of the BIA's or the IJ's decisions if they simply assure us that they considered everything they were legally obligated to consider.[3]

Next, the majority rejects Almaghzar's argument regarding the IJ's use of boilerplate language because "8 C.F.R. § 1208.16(c)(3) . . . does not require an IJ's decision to discuss every piece of evidence; it requires only that the IJ consider all evidence." (Op. at 8869.) I find this argument unpersuasive and inconsistent with our case law. In the asylum context, 8 C.F.R. § 1208.13 plays a role analogous to that of 8 C.F.R. § 1208.16(c) in the CAT context; both elaborate procedures for the respective claims for relief. And just like § 1208.16(c), § 1208.13 by its terms does not require that "an

---

[3]In other contexts, we have been quite clear that there is a distinction between considering something and merely stating a conclusion. *See, e.g.*, *United States v. Howell*, 231 F.3d 615, 621, 622 (9th Cir. 2000) ("[I]n making a decision on whether to consider newly offered evidence, the district court must actually exercise its discretion, rather than summarily accepting or denying the motion.").

IJ's decision . . . discuss every piece of evidence."[4] (Op. at 8869.) Yet this court has repeatedly held that in the asylum context,

> [t]he BIA must have a legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief. Furthermore, any such reasons must be substantial and bear a legitimate nexus to the finding. Generalized statements that do not identify specific examples of evasiveness or contradiction in the petitioner's testimony prevent us from conducting a proper review.

*Garrovillas*, 156 F.3d at 1013 (internal citations and quotations omitted); *see also Zahedi v. INS*, 222 F.3d 1157, 1163 (9th Cir. 2000); *Lopez-Galarza v. INS*, 99 F.3d 954, 963 (9th Cir. 1996) ("We note that at a minimum, the BIA must provide an explanation sufficient to enable us as a reviewing court to see that the Board has heard, considered, and decided.") (internal citations and quotation marks omitted). The majority gives no reasons why a CAT claim denial should be treated with so much deference — taking the IJ at his word that he considered all the evidence — while the denial of an asylum claim is scrutinized for specific, cogent reasons. The text of the respective regulations does not justify this divergent result.

The majority also states that "[b]ecause there is no evidence that the IJ failed to consider Almaghzar's documentary evidence, we accept the IJ's general statement that he considered all the evidence before him." (Op. at 8869.) But even if

---

[4]In fact, § 1208.13 does not appear to include an analogue to § 1208.16(c)(3)'s directive that "all evidence relevant to the possibility of future torture shall be considered." However, the REAL ID Act's revision of 8 U.S.C § 1158(b)(1) now instructs the trier of fact in asylum proceedings to "consider[ ] the totality of the circumstances" when making a credibility determination. 8 U.S.C § 1158(b)(1)(B)(iii) (2006).

we credit the IJ's cursory statement that he had "considered all of the evidence, documentary and testimonial, whether or not . . . specifically mention[ed]" in his opinion, that statement does not satisfy the standard of review for CAT claims established in *Kamalthas*. Boilerplate rejections of CAT claims are not legally sufficient.

*Kamalthas* explicitly imported the abuse of discretion standard from the deportation (now removal) context into considerations of CAT claims: "we vacate the Board's decision on the ground that 'the BIA abuse[d] its discretion when it failed to state its reasons and show proper consideration of all factors when weighing equities and denying relief,' and remand for further proceedings consistent with this opinion." 251 F.3d at 1284 (quoting *Arrozal*, 159 F.3d at 432). Boilerplate statements by the BIA (or presumably the IJ) are by definition an abuse of discretion in the deportation context:

> The BIA abuses its discretion when it fails to state its reasons and show proper consideration of *all* factors when weighing equities and denying relief. . . . Moreover, the BIA must indicate how it weighed these factors and indicate with specificity that it heard and considered petitioner's claims. A conclusory statement by the BIA concerning favorable factors is insufficient.

*Arrozal*, 159 F.3d at 432-33 (internal citations and quotations omitted) (emphasis in original). This is no longer an issue of first impression, and the majority errs by ignoring the CAT standard of review established by *Kamalthas*.

The majority concludes that "neither *Kamalthas* nor due process requires an IJ to rely on that evidence to grant relief when the applicant is not credible," (op. at 8868), and "[b]ecause Almaghzar's testimony was found not credible, to reverse the BIA's decision we would have to find that the reports alone compelled the conclusion that Almaghzar is

more likely than not to be tortured" (op. at 8870). Such conclusions miss the point of *Kamalthas*. Under *Kamalthas*, we must inquire whether the BIA treated a CAT claim as a subset of an asylum claim and permitted the adverse credibility finding in the asylum claim to "wash over" the CAT claim, or whether the BIA treated CAT as a separate legal basis for relief and reevaluated evidence that may have also been relevant in the asylum context, including an applicant's credibility, in light of the distinct standard for relief mandated by CAT. *See* 251 F.3d at 1283-84. The majority commits the same error the BIA committed in *Kamalthas* — it fails to recognize that there is not a single, general purpose adverse credibility determination applicable to both asylum and CAT claims. Rather, *Kamalthas*'s holding necessarily establishes the possibility that an applicant could be found to be not credible with respect to asylum, but credible with respect to CAT.

Lastly, the majority treads on dangerous ground by deciding the CAT issue in the first instance without being informed by an intervening BIA decision on the matter. *Cf. INS v. Ventura*, 537 U.S. 12 (2002) (per curiam) (holding that the BIA should be given the opportunity to exercise its expertise in the first instance on an issue it had not addressed); *Gonzales v. Thomas*, 126 S. Ct. 1613 (2006) (per curiam) (same). We do not know how the BIA would treat the country conditions evidence of torture in this case, and we do not know whether (or how) the BIA would reevaluate Almaghzar's adverse credibility determination in the asylum context in light of the evidence of torture in Yemen. Therefore, under *Kamalthas* and pursuant to the direction given to this court in particular by the Supreme Court in *Ventura* and *Thomas*, the prudent course would be for us to remand the CAT claim to the BIA so that it can make a reasoned ruling in the first instance. On remand, the BIA should be instructed not to import the adverse credibility determination from the asylum context to Almaghzar's CAT claim and to consider Yemeni country conditions explicitly and "with specificity." *Arrozal*, 159 F.3d at 433.

I therefore respectfully dissent from the majority's decision with respect to Almaghzar's claim for relief under CAT.