**Navneet VAID, Petitioner,**

v.

**Michael B. MUKASEY, Attorney General, Respondent.**

No. 06–73634.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2007.

Filed July 11, 2008.

---

1. Cal. Civ.Code § 3439.07(a)(3)(C).

Rawlinson, Circuit Judge, concurred in result.

Teresa Salazar, Law Offices of Martin Resendez Guajardo a Professional Corporation, San Francisco, CA, for Petitioner.

Ronald E. Lefevre, Chief Counsel, Office of the District Counsel Department of Homeland Security, San Francisco, CA, Anthony C. Payne, Esq., DOJ–U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before: B. FLETCHER, CANBY, and RAWLINSON, Circuit Judges.

MEMORANDUM *

Petitioner Navneet Vaid, a native and citizen of India, seeks review of a decision of the Board of Immigration Appeals ("BIA"), which affirmed the decision of the Immigration Judge ("IJ") denying Vaid's

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

requests for asylum, withholding of removal and relief under the Convention Against Torture ("Convention"). We deny the petition.

The BIA "adopted and affirmed" the rulings of the IJ that Vaid's asylum application was time-barred, and that his testimony was incredible and therefore insufficient to support withholding of removal. The BIA "affirmed" the IJ's rulings that, even if Vaid's testimony were credible, changed country conditions rebutted any presumption of a well-founded fear of persecution, and that Vaid had failed to establish eligibility for relief under the Convention Against Torture. All of these rulings by the BIA were accompanied by a citation to *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), indicating that the BIA's "conclusions are the same as those articulated by the IJ." *Moreno–Morante v. Gonzales*, 490 F.3d 1172, 1174 (9th Cir. 2007). Thus, we review the IJ's decision as if it were that of the BIA. *Id.*

### 1. Asylum

We ordinarily lack jurisdiction to review the agency's determination that Vaid's application for asylum was untimely and that no extraordinary circumstances excused his untimeliness. 8 U.S.C. § 1158(a)(3). As an exception to this statutory bar, the REAL ID Act restores our jurisdiction to review "constitutional claims or questions of law" upon a petition for review. 8 U.S.C. § 1252(a)(2)(D). "Questions of law" include the "application of statutes and regulations to undisputed historical facts." *Ramadan v. Gonzales*, 479 F.3d 646, 654 (9th Cir.2007) (footnote omitted).

■ The IJ concluded that Vaid had failed to establish extraordinary circumstances because his explanation of why he did not apply for asylum within one year of arrival in the United States was not credible. Therefore, the historical facts in this case are disputed, the IJ's ruling does not present a question of law, and we are barred by section 1158(a)(3) from reviewing it. *But cf. Husyev v. Mukasey*, 528 F.3d 1172, 1178–81 (9th Cir.2008) (holding that where the facts are undisputed, this court has jurisdiction to review the agency's extraordinary facts determination).

### 2. Withholding of Removal

Because the one-year deadline applies only to asylum applications, we have jurisdiction under 8 U.S.C. § 1252 to review the agency's final order denying withholding of removal. *See Shire v. Ashcroft*, 388 F.3d 1288, 1294 (9th Cir.2004). We review for substantial evidence the BIA's decision to deny relief. *Del Carmen Molina v. INS*, 170 F.3d 1247, 1249 (9th Cir.1999). Vaid is entitled to withholding of removal if it is more likely than not that his life or freedom will be threatened because of his imputed association with militant Sikh separatists. *See* 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(b)(2); *Lopez–Galarza v. INS*, 99 F.3d 954, 959 (9th Cir.1996) ("Persecution on account of *imputed* political opinion ... satisfies the motive requirement, whether or not that imputation is accurate."). If, as he testified, Vaid was actually subjected to arbitrary arrests and custodial beatings at the hands of the Indian police for his imputed association with militant Sikh separatists, he is presumptively entitled to relief. *See Singh v. Ilchert*, 63 F.3d 1501, 1508, 1510 (9th Cir. 1995); 8 C.F.R. § 1208.16(b)(1)(i).

The government may then rebut this presumption by showing that "[t]here has been a fundamental change in circumstances such that [Vaid]'s life or freedom would not be threatened on account of [his imputed political opinion]." 8 C.F.R. § 1208.16(b)(1)(i)(A). Alternatively, the government may rebut the presumption by showing that Vaid "could avoid a future

threat to his ... life or freedom by relocating to another part of [India] and, under all the circumstances, it would be reasonable to expect [him] to do so." 8 C.F.R. § 1208.16(b)(1)(i)(B).

■ The IJ rejected Vaid's application for withholding of removal primarily on the ground that Vaid's testimony was not credible. We need not address that ruling, however, because the IJ made an alternative finding that country conditions had changed to a degree that made it unlikely that Vaid would be subjected to persecution if removed to India. We conclude that substantial evidence supports that finding. *See Smolniakova v. Gonzales,* 422 F.3d 1037, 1052 (9th Cir.2005) ("We review the IJ's factual findings regarding changed country conditions for substantial evidence."). We accordingly reject Vaid's claim for withholding of removal.

The IJ recited that, "[o]ver the years as the separatist movement through militancy was all but extinguished in the state of Punjab, the circumstances there are acknowledged to have normalized and rank and file members of political parties who operate within the bounds of the law are acknowledged as no longer in fear of government arbitrary arrests on political grounds." Thus, the IJ concluded, the Indian police's continued practice of custodial abuses and torture mentioned in the country report "do[es] not seem at this point to be politically motivated." [1] In this interpretation of the somewhat inconclusive picture of human rights abuses in India painted by the country report, we defer to the agency's expertise. *Gonzalez–Hernandez v. Ashcroft,* 336 F.3d 995, 999 (9th Cir.2003) ("[I]t is entirely appropriate for the BIA to bring its expertise to bear upon the matter, and decide which portions of the report are relevant to the

applicant." (internal quotation marks and citation omitted)).

The most difficult question is whether this change in country conditions is satisfactorily tailored to Vaid's situation. The insurgency in the Punjab, which gave rise to the government's repressive counterinsurgency measures, reached its height in the decade from 1984 to 1994. Vaid testified that his arrests and torture occurred in 1995, 1997 and 1999. A question arises, therefore, whether the decline in the Punjab insurgency and the government's counterinsurgency changed the conditions that prevailed at the time of Vaid's alleged persecution. Nevertheless, it is clear that Vaid's testimony related his mistreatment to the "militant" activity in the Punjab that existed in the recent past before his arrests. The fact that both the insurgency and the counterinsurgency had been wholly dormant in the period of several years since Vaid's last arrest is a condition that the IJ was entitled to take into account.

We also conclude that the IJ sufficiently related the changed condition to Vaid's individual situation and the threat faced by him, as required by *Marcos v. Gonzales,* 410 F.3d 1112, 1120–21 (9th Cir.2005). In *Marcos,* we held that changed conditions had not been properly related to the petitioner's individual situation because the improvement in country conditions had been an improvement in government conduct, and the petitioner's threat came from guerillas. *See id.* at 1119–20. But here, the IJ did relate the changes to the threat allegedly faced by Vaid.

Vaid's arrests were clearly part of the government's reaction to the activities of Sikh militants in the Punjab and, in one case, to a particular bombing. The IJ noted the upsurge in police activity imme-

---

1. The IJ's findings of country conditions were based entirely on the 2004 Country Report of the U.S. Department of State, which was released in February 2005.

diately after the bombing, but also noted that a group had claimed responsibility for the bombing and that several arrests had quickly cleared up the incident. The IJ also found that, in the several years thereafter, the militant separatist movement was "all but extinguished in the state of Punjab," and that ordinary members of political parties no longer feared arrests. Although human rights violations by police against arrested persons in general continued, there was no reason to believe that Vaid was any more likely than any other person to be arrested. The IJ pointed out that Vaid had not been politically active, and never had admitted to any militant activity or been apprehended engaging in any such activity. Finally, the IJ noted that Vaid and his wife were Hindus, like the majority of Indians, and that the insurgency had been carried on by Sikhs. Under current conditions, therefore, Vaid and his wife were simply unlikely to be the subject of any government persecution. These findings, we conclude, were supported by substantial evidence and were sufficiently tailored to Vaid's circumstances to meet the requirements of *Marcos. See id.* at 1120–21. They were sufficient to overcome any presumption of persecution arising from Vaid's evidence of past persecution.[2] We therefore reject Vaid's claim of entitlement to withholding of removal.

### 3. Convention Against Torture

 The IJ denied relief under the Convention, finding that there was "no basis . . . to believe that [Vaid] would be arrested if he went back to India" and that the only risk of torture in India arises from random custodial abuses at the hands of the Indian police seeking "a bribe or to extract a confession." As we discussed in the previous section, however, substantial evidence supports the IJ's finding that Vaid is not likely to be arrested if removed to India under current conditions. Accordingly, the evidence does not compel a conclusion that Vaid would more likely than not be tortured if returned to India. *See Almaghzar v. Gonzales,* 457 F.3d 915, 922–23 (9th Cir.2006). We therefore uphold the IJ's denial of relief under the Convention.

### 4. Conclusion

We lack jurisdiction to review Vaid's untimely claim of eligibility for asylum. We do not address the IJ's adverse credibility determination because, even if we assume that the testimony of Vaid and his wife was truthful, Vaid is not entitled to withholding of removal or relief under the Convention Against Torture. Substantial evidence supports the findings of the IJ, affirmed by the BIA, that it is not more likely than not that Vaid's life or freedom would be threatened, or that he would be tortured, if returned to India under current conditions.

**PETITION FOR REVIEW DENIED.**

RAWLINSON, Circuit Judge, concurring:

I concur in the result.

---

2. The BIA ruled that the evidence of changed country conditions was sufficient to overcome the presumption of "well-founded fear" of future persecution required for asylum. This ruling necessarily includes a finding that the government had rebutted the presumption of future persecution for purposes of withholding of removal. *See Gonzalez–Hernandez,* 336 F.3d at 1001 n. 5 (holding that, if a petitioner does not qualify for asylum, "it necessarily follows that [he] do[es] not qualify for withholding of removal").