NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ISIDRO PENA-MIER, | No. 19-73072 |
| Petitioner, | Agency No. A092-823-175 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted January 11, 2022[**]
Pasadena, California

Before: CLIFTON, M. SMITH, and WATFORD, Circuit Judges.

Isidro Pena-Mier, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals (BIA) dismissing his appeal from the decision of an immigration judge (IJ) denying his application for deferral of removal under the Convention Against Torture (CAT). We deny the petition.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

**1.** Pena first contends that the BIA erred in affirming the IJ's finding that Pena's 2004 beating at the hands of four police officers in Mexicali did not amount to past torture. Torture is defined under the CAT regulations as "an extreme form of cruel and inhuman treatment." 8 C.F.R. § 1208.18(a)(2). Pena suffered several broken bones and spent three or four weeks recovering at the home of a stranger, but he never sought treatment from a medical professional. As the IJ noted, the police officers' conduct was abhorrent, but the evidence does not compel a finding that it amounted to torture. *See Kumar v. Gonzales*, 444 F.3d 1043, 1055–56 (9th Cir. 2006) (upholding the IJ's finding that a petitioner who was detained and physically abused by police for a month did not suffer past torture).

Pena also notes that the IJ failed to acknowledge his contact with cartel members after the attack. However, the BIA correctly concluded that this error was not material to the issue of past torture. The cartel members did not harm Pena, and there is no suggestion that they threatened him with imminent death, as required to establish torture under these circumstances. *See* 8 C.F.R. § 1208.18(a)(4)(iii).

**2.** The BIA correctly upheld the IJ's finding that Pena did not establish that he was more likely than not to be tortured if returned to Mexico. The country conditions reports and the testimony of Pena's expert show widespread cartel violence with the involvement or acquiescence of public officials. While this

evidence suggests that Pena could be identified as a former gang member based on his tattoos and that cartels sometimes target former gang members for recruitment, it does not compel the conclusion that he would be identified, targeted for recruitment, and killed because of his refusal to join.

Pena contends that he was targeted by police officers in 2004 because of his gang-related tattoos and that he would once again be targeted on this basis if returned to Mexico. However, the IJ's contrary finding—that the attack was random and unrelated to his gang membership—is supported by substantial evidence.

Because Pena did not establish that he had suffered past torture or been targeted based on his gang affiliation, the BIA properly concluded that the IJ's failure to consider his subsequent contact with cartel members was not material to his likelihood of future torture. The BIA also correctly held that the IJ's error in misconstruing Pena's testimony regarding his gang-related tattoos was harmless. The IJ analyzed Pena's claim on the assumption that he did have gang-related tattoos, and she found him otherwise credible.

**3.** Pena argues that the IJ abused her discretion by affording diminished weight to Dr. Farfan-Mendez's testimony. Contrary to the IJ's finding, Dr. Farfan-Mendez's answers to some of the government's questions—such as her refusal to estimate what specific percentage of Mexican police officers are corrupt and her

inability to empirically evaluate whether the Mexican government is "trying its best"—were not evasive. Nonetheless, the IJ's decision to give limited weight to Dr. Farfan-Mendez's testimony was not an abuse of discretion. The IJ accepted Dr. Farfan-Mendez's central contentions when she found that "the evidence does set forth a persuasive case that the Mexican police at every level have engaged in, or acquiesced to, torture and extrajudicial killings." But the IJ has broad discretion in weighing evidence, and here she permissibly exercised this discretion by refusing to accept the expert's conclusory assertion that Pena would be identified by cartels and killed if he were returned to Mexico. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 706 n.7 (9th Cir. 2010).

**4.** Pena asserts two final grounds for reversal. First, he contends that the IJ misconstrued his testimony as vague and failed to consider his more specific statements regarding the police attack and his contact with the cartels. Second, he argues that the BIA violated his due process rights by failing to explain its discounting of Dr. Farfan-Mendez's testimony and by failing to consider Pena's arguments and documentary evidence. These claims are without merit. The IJ acknowledged Pena's fear that he would be targeted as a former gang member, and her characterization of Pena's testimony is borne out by the record. The BIA likewise provided a reasoned explanation for its decision, and there is no indication that it failed to consider any of Pena's arguments or evidence. *See Almaghzar v.*

*Gonzales*, 457 F.3d 915, 922 (9th Cir. 2006).

**PETITION FOR REVIEW DENIED.**