**Juan MONJARAZ–MUNOZ, Petitioner.**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 02–70227.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2003.

Filed April 28, 2003.

Karla L. Kraus, Law Offices of Karla L. Kraus, San Diego, CA, for the petitioner.

Jennifer A. Parker and Cindy S. Ferrier, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for the respondent.

Before: HALL, THOMPSON, and BERZON, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge.

In this petition for review from a decision of the Board of Immigration Appeals (BIA), we deal with the extent to which ineffective assistance of counsel may constitute "exceptional circumstances ... beyond the control of the alien," 8 U.S.C. § 1229a(e)(1), requiring rescission of an *in absentia* deportation order and the reopening of immigration proceedings. Juan Monjaraz–Munoz ("Monjaraz") was ordered deported *in absentia* after he did not appear at his deportation hearing. He filed a motion to reopen the proceedings before the BIA. Monjaraz claims that he did not appear at the hearing because he was advised by an agent of his attorney to cross the border into Mexico the day before the hearing. A panel of the BIA found that Monjaraz had complied with the procedural requirements for making out a case of ineffective assistance of counsel required by its decision in *Matter of Lozada*, 19 I. & N. Dec. 637, 1988 WL 235454 (BIA), *aff'd*, 857 F.2d 10 (1st Cir.1988). The panel, with one Board Member dis-

senting, nevertheless held that Monjaraz's reasons for not showing up at his hearing did not amount to "exceptional circumstances ... beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). It therefore refused to rescind the deportation order and reopen the proceedings. Monjaraz timely petitioned for review before this court.

We have jurisdiction under 8 U.S.C. § 1252(b). Because we find that Monjaraz's reasons for failing to appear at his hearing constitute exceptional circumstances beyond his control, we **GRANT** the petition for review and **REMAND** for further proceedings.

## BACKGROUND

In August 1996, Monjaraz was cleaning carpets in an apartment building in San Diego. When he went outside to look for a co-worker, he ran into someone who "looked like a policeman" who questioned him about his immigration status. He was detained by this person. After being detained, Monjaraz was issued an Order to Show Cause (OSC) by the Immigration and Naturalization Service ("INS") on August 6, 1996. In the OSC, the INS charged that Monjaraz had entered the United States without inspection. Monjaraz retained Carlos Batara ("Batara") as his attorney in November 1996.

Batara, after apparently consulting with Monjaraz, decided to move to terminate the proceedings because Monjaraz had a valid multi-entry visa. Batara reasoned that because Monjaraz had entered the United States using a valid visa, he could not have entered without inspection. The INS disputed the validity of Monjaraz's passport, visa, and the admission stamps on his passport.

In order to prove the validity of the visa, Batara took Monjaraz to the Mexican Consulate in San Diego. Officials at the Consulate told them that Monjaraz's Mexican passport appeared to be valid. Batara instructed his assistant and wife, Angelica Jimenez–Batara ("Jimenez"), to take Monjaraz to the San Ysidro port of entry to ask immigration officials there to assess the validity of Monjaraz's visa. An official told them that he thought that the visa appeared to be valid.

Batara then scheduled a meeting with officials of the INS to show them Monjaraz's passport and visa. The INS continued to dispute the validity of the passport and visa. Batara then contacted the Mexican Consulate who advised Batara to contact the American Consulate in Mexico, where Monjaraz apparently acquired his visa, and obtain Monjaraz's original visa application. Monjaraz later told Batara that his family could get the documentation to him within 7 days.

Monjaraz crossed the border into Mexico the day before his hearing and was not allowed back into the United States. Monjaraz contacted Batara to tell him he could not get back into the United States. Batara told the Immigration Judge ("IJ") at Monjaraz's hearing that Monjaraz was in Tijuana and could not cross the border to attend the hearing. Batara claimed that he had no idea why Monjaraz had crossed the border. The IJ ordered Monjaraz to be deported *in absentia* pursuant to 8 U.S.C. § 1229a(b)(5)(A). Since Monjaraz was not available to testify, the IJ could not find that Monjaraz had entered the country with inspection, as Monjaraz claimed. Batara filed a notice of appeal on behalf of Monjaraz. Batara did no more work on the case.

Monjaraz, on appeal, did not file a brief contesting the IJ's decision. Rather, he sought to have his deportation order rescinded on the ground that he failed to attend his hearing due to exceptional cir-

cumstances. In a sworn declaration, Monjaraz claimed that he left the country the day before the hearing because Jimenez, the wife and assistant of Batara, instructed him to do so. Monjaraz stated that Jimenez called him the day before the hearing and told him that she was acting pursuant to instructions from Batara. She told him "to leave the United States to Tijuana, Mexico to eat tacos." Then, Monjaraz was to immediately re-enter the United States using his visa. This, according to Jimenez, would prove to the IJ that his visa was valid.

Monjaraz's wife, Rosaura Servin ("Servin"), also submitted a sworn declaration. Servin claims she listened to the conversation between Monjaraz and Jimenez. Servin claims she heard Jimenez tell Monjaraz, "I want you to go to[Tijuana] and have some tacos and come back again so they can stamp your passport." Servin also claims to have asked Batara a few days after Monjaraz was detained at the border why he had advised Monjaraz to cross the border. Batara "kept quiet for a minute and told us to see about the passport because he did not think it was a good visa."

Copies of the declarations of Monjaraz and Servin were sent to Batara. Batara filed a declaration with the BIA in response to Monjaraz's allegations. Batara declares that he "never suggested, recommended, asked, or advised[Monjaraz] to personally obtain" records from the American Consulate in Mexico. Batara claims that he learned that Monjaraz was in Mexico the day before the hearing—the day that Monjaraz claims he left for Mexico. Batara says that "[a]t that point in time, I did not know why [Monjaraz] had traveled to Mexico and I did not why [sic] he had been detained." Batara says that he spoke to Servin several days after the hearing and he was confused by Servin's explanation of why Monjaraz went to Mexico.

Monjaraz filed a motion to reopen the proceedings with the BIA. The BIA denied the motion with one Board Member dissenting. The BIA held that Monjaraz had complied with its procedural requirements for a motion to reopen on the basis of ineffective assistance of counsel. The BIA went on to hold that the facts alleged by Monjaraz did not qualify as exceptional circumstances beyond his control. 8 U.S.C. § 1229a(e)(1).

## STANDARDS OF REVIEW

■ We review the BIA's ruling on a motion to reopen for an abuse of discretion. *Shaar v. INS,* 141 F.3d 953, 955 (9th Cir.1998). Questions of law are reviewed de novo, *Lopez v. INS,* 184 F.3d 1097, 1099 (9th Cir.1999), as are claims of due process violations in deportation proceedings. *Castillo–Perez v. INS,* 212 F.3d 518, 523 (9th Cir.2000).

■ We review the BIA's findings of fact, including credibility findings, for substantial evidence and must uphold the BIA's finding unless the evidence compels a contrary result. *INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Singh–Kaur v. INS,* 183 F.3d 1147, 1149–50 (9th Cir.1999). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Under this "extremely deferential" standard, we "must uphold the BIA's findings unless the evidence presented would *compel* a reasonable finder of fact to reach a contrary result." *Singh–Kaur,* 183 F.3d

at 1149–50 (emphasis in the original) (internal quotations and citations omitted).

## DISCUSSION

■ Monjaraz undoubtedly complied with the three procedural requirements for stating a prima facie case of ineffective assistance of counsel under *Matter of Lozada*, 19 I. & N. Dec. 637, 1988 WL 235454 (BIA), *aff'd*, 857 F.2d 10 (1st Cir.1988).[1] First, Monjaraz filed an affidavit regarding his agreement with his attorney, Batara. Second, Batara was clearly informed of the allegations of ineffective assistance, as he responded to the allegations by filing his own affidavit with the BIA. Finally, a letter was sent to the California State Bar regarding Batara's alleged misconduct. The BIA recognized this but nevertheless denied the motion to reopen. The BIA held that while the procedural requirements for granting a motion to reopen based on ineffective assistance had been met, the substantive requirements had not. The BIA concluded that the facts alleged by Monjaraz did not constitute exceptional circumstances. In so concluding, the BIA failed to credit Monjaraz's version of the facts.

### *Exceptional Circumstances*

■ An *in absentia* removal order shall be rescinded if the alien demonstrates that he failed to appear because of "exceptional circumstances." *Sharma v. INS*, 89 F.3d 545, 547 (9th Cir.1996). The Immigration and Nationality Act defines exceptional circumstances as "circumstances (such as serious illness of the alien or serious illness or death of the spouse, child, or parent of the alien, but not less

compelling circumstances) beyond the control of the alien." 8 U.S.C. § 1229a(e)(1).

■ It is with the statute that we must start our analysis. When analyzing what constitutes an exceptional circumstance, courts and agencies must determine if an alien's failure to appear at a hearing was due to a circumstance "beyond the control of the alien." *Id.* If an alien exercises his or her statutory right to retain counsel in a deportation proceeding, it is reasonable that an alien would give effective control of his or her case to retained counsel. Because of this, if an alien fails to appear because of his actual and reasonable reliance on counsel's erroneous advice, we conclude that it can constitute a circumstance beyond the alien's control. *Cf. Romani v. INS*, 146 F.3d 737, 739 (9th Cir. 1998) (granting a motion to reopen for appellants ordered deported *in absentia* when those appellants had appeared at the courthouse but failed to enter the courtroom due to erroneous advice of counsel).

The BIA's decision in *In re Grijalva*, 21 I. & N. Dec. 472, 1996 WL 413571 (BIA 1996), also lends support to the proposition that an alien's failure to attend a hearing based on negligent advice from an attorney constitutes an exceptional circumstance. Grijalva, like Monjaraz here, was deported *in absentia*. Grijalva moved to reopen the proceedings based on ineffective assistance of counsel. Grijalva complied with all the *Lozada* requirements. Grijalva alleged that he failed to attend his hearing because "an employee of his prior attorney called to inform him that there had been a continuance and that he should not appear." *Id.* This information turned out to be untrue. An affidavit submitted

---

1. We have adopted the *Lozada* requirements. *Lata v. INS*, 204 F.3d 1241, 1246 (9th Cir. 1999). The three requirements are: (1) an affidavit by the alien setting forth the agreement with counsel regarding the alien's representation; (2) evidence that counsel was informed of the allegations and allowed to respond; and (3) an indication that a complaint has been lodged with the bar, or reasons explaining why not. *Id.*

by Grijalva's former attorney confirmed the story. The BIA granted Grijalva's motion, deeming his reliance on his attorney's employee's advice to be exceptional circumstances. *Id.*

The INS points to *Singh–Bhathal v. INS*, 170 F.3d 943 (9th Cir.1999), as authority for its claim that Monjaraz's failure to appear at the hearing due to the advice of his attorney's assistant is not an exceptional circumstance. In *Singh–Bhathal*, a private immigration consultant advised the petitioner not to appear at his deportation hearing. *Id.* at 944. We held that the erroneous advice of an immigration consultant did not constitute an exceptional circumstance requiring reopening of the proceedings. *Id.* at 946.

The INS, however, fails to see the crucial difference between the situation before us in the instant appeal and the situation before us in *Singh–Bhathal*. Here, Monjaraz claims to have relied on the advice of an attorney. The role of an attorney in the deportation process is especially important. For the alien unfamiliar with the laws of our country, an attorney serves a special role in helping the alien through a complex and completely foreign process. It is therefore reasonable for an alien to trust and rely upon an attorney's advice to such an extent that if an alien fails to show up to a hearing because of an attorney, we can say that this is an exceptional circumstance "beyond the control of the alien." 8 U.S.C. § 1229a(e)(1). Moreover, courts and agencies have a degree of institutional control over attorneys that they do not have over freelance "immigration consultants." We therefore conclude that if Monjaraz did in fact fail to appear at his hearing because he relied on the negligent advice of his attorney's agent that he travel to Tijuana the day before his hearing, this would constitute an exceptional circumstance beyond Monjaraz's control.

## Credibility and Factual Determinations

In determining that Monjaraz's departure from the United States was "entirely voluntary," the BIA did not credit Monjaraz's declaration. The BIA cited no evidence that can support a finding that Monjaraz's version of the facts was incredible, nor do we find any. A reasonable fact finder would therefore be compelled to find Monjaraz's story credible. *Singh–Kaur*, 183 F.3d at 1149–50.

To the extent that the BIA relied on Batara's declaration to justify its failure to credit Monjaraz's story, it erred. As discussed below, the statements in Batara's declaration do not contradict the essential facts of Monjaraz's declaration nor do they provide any reason to doubt Monjaraz's credibility.

The dissenting Board Member correctly faulted the majority for relying on Batara's affidavit to conclude that Monjaraz failed to show exceptional circumstances. Even if all of Batara's statements are credited, his affidavit fails to controvert Monjaraz's assertion that Batara's wife told him to go to Tijuana.

Batara claims that he "never suggested, recommended, asked, or advised [Monjaraz] to personally obtain" documents from the American Consulate in Mexico. Neither Monjaraz, nor his wife, however, ever claimed that Batara had told Monjaraz to cross the border "to personally obtain" documents from the American Consulate. They claimed that Jimenez, Batara's wife and assistant, told Monjaraz to cross the border and then immediately re-enter the United States in order to prove the validity of his visa. Batara never denies this allegation or even mentions the allegation at all in his declaration "in response" to Monjaraz's claims. Batara furthermore claims that "[t]he day before the Merits Hearing, I learned that [Monjaraz] had

been detained at the San Ysidro/Tijuana port of entry. At that point in time, I did not know why [Monjaraz] had traveled to Mexico and I did not [know] why he had been detained." Nowhere in his declaration does Batara ever say that he still does not know why Monjaraz left for Mexico. He only claims that at the moment he learned that Monjaraz had been detained, he did not know why he traveled to Mexico. Finally, Batara never denies that, in a meeting with Servin a few days after the hearing he only responded in silence when Servin asked him why he told Monjaraz to cross the border. He merely notes that Servin's "explanation regarding the personal reasons for [Monjaraz's] trip to Mexico was not clear."

Copies of the declarations of Monjaraz and Servin were sent to Batara. Batara's declaration is titled as a "response to [Monjaraz's] allegations of ineffective assistance." Yet, he never denies the specific allegations of Monjaraz and Servin that his assistant told Monjaraz to cross the border to test the validity of Monjaraz's visa. We expect more from an attorney faced with such serious allegations.[2] Batara's response to Monjaraz's and Servin's allegations is simply not a response at all.

No other evidence supported the BIA's rejection of Monjaraz's and Servin's allegations. The BIA's rejection of Monjaraz's and Servin's declarations was therefore not supported by substantial evidence. The BIA's adverse credibility finding was error.

## CONCLUSION

The BIA erred by failing to credit the allegations Monjaraz and Servin set forth in their respective declarations. Giving credit to those allegations, Monjaraz established that his failure to appear at his deportation hearing was due to his reasonable and justifiable reliance on the advice of his attorney's agent. We hold that this constitutes an exceptional circumstance beyond Monjaraz's control. The BIA therefore abused its discretion by denying Monjaraz's motion to reopen.

The petition for review is **GRANTED**. The cause is **REMANDED** with instructions that Monjaraz's motion to reopen be granted and further proceedings be conducted in a manner consistent with this opinion.[3]

---

2. It is also telling that Batara never submitted a declaration from Jimenez. Batara certainly knew the whereabouts of Jimenez. At the time of Batara's declaration, Jimenez was still his wife. We do not suggest that such a declaration was required; we just note it as one more circumstance tending to show that Batara does not deny Monjaraz's and Servin's allegations.

3. In light of our disposition, it is not necessary for us to determine whether Monjaraz's right to due process of law under the Fifth Amendment was violated.