FILED

MAY 21 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARIAM SHARIKYAN, | No. 05-76879 |
| Petitioner, | |
| | Agency No. A079-542-392 |
| v. | |
| | MEMORANDUM* |
| ERIC H. HOLDER, Jr., Attorney General, | |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 3, 2010
Pasadena, California

Before: NOONAN, CLIFTON and BYBEE, Circuit Judges.

Mariam Sharikyan appeals the Board of Immigration Appeals ("BIA's")

decision affirming the Immigration Judge's ("IJ's") adverse credibility finding.

We agree with Sharikyan that the IJ's adverse credibility finding was not supported

by substantial evidence. The IJ also concluded, however, that even if Sharikyan's

testimony was deemed credible, she still would not qualify for asylum because her

_____

    *    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

personal circumstances had changed to the degree that she no longer had an objectively well-founded fear of future persecution. We grant the petition and remand to allow the BIA to address whether, accepting Sharikyan's testimony as credible, Sharikyan is entitled to relief.[1]

## I

"We review the BIA's findings of fact, including credibility findings, for substantial evidence and must uphold the BIA's finding unless the evidence compels a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). Because Sharikyan filed her asylum application before May 5, 2005, the IJ "must provide specific, cogent reasons to support his [adverse credibility] determination which cannot be peripheral, but rather must go

---

[1] At oral argument, Sharikyan's counsel stated that one of its claims on appeal was that the BIA had ignored Sharikyan's argument that her original counsel provided ineffective assistance. Sharikyan did not present this claim in her final brief before the BIA or in her opening brief before this court. Accordingly, Sharikyan has forfeited her ineffective assistance of counsel claim and we decline to address it. *See Martin v. City of Oceanside*, 360 F.3d 1078, 1081 (9th Cir. 2004) (explaining that a party "forfeit[s] review of [a] claim . . . [if] the issue is not specifically and distinctly argued in h[er] opening brief." (quotation marks omitted)).

to the heart of petitioner's claim." *Don v. Gonzales*, 476 F.3d 738, 741 (9th Cir. 2007) (quotation marks and alterations omitted).

Most of the bases on which the IJ rested its adverse credibility finding are the kind of "minor inconsistencies" that "cannot support an adverse credibility determination." *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005). Purported inconsistencies that fall into this category include: whether Sharikyan's son was tied to a chair or to a stool when he was beaten; the location of the son's scar; whether the son's wife miscarried or showed signs of miscarrying before delivering; and whether Sharikyan wrote a letter to the National Assembly.[2]

The IJ's other reasons for finding Sharikyan incredible fare no better as they either do not reflect true inconsistencies or do not go to the heart of Sharikyan's claim. *Don*, 476 F.3d at 741. First, the IJ noted that Sharikyan could not remember the date of her son's marriage. It is true that when asked when her son was married, Sharikyan initially answered, "it was in 1999." She soon corrected herself to say "year 2000," however, and she continually insisted that the marriage

---

[2] The Government makes much of the contradiction between Sharikyan's written declaration that she and her son had "forwarded a written complaint to the National Assembly," and her oral testimony that she had never written anything to the National Assembly. The record indicates, however, that Sharikyan adequately explained the discrepancy when she told the judge that they had "done a mistake," and that it was actually her son who had written to the National Assembly. The son verified this account in his own testimony.

occurred on July 29. That her son was married in late July of 2000 is consistent with Sharikyan's testimony that she was attacked while her son was on his honeymoon in August 2000. A quickly corrected mistake as to the year of a marriage is the kind of "minor discrepanc[y] in [a] date[]" that "ha[s] no bearing on credibility." *Kaur*, 418 F.3d at 1064.

Second, the IJ pointed to Sharikyan's son's initial testimony that he had "gone to [indiscernible] affairs of goods," and not his honeymoon, when his mother was beaten. As with the previous testimony, Sharikyan's son immediately corrected himself on this point and repeatedly reaffirmed that he was actually in Savon on his honeymoon at the time of the attack. Because the son testified that he was on his honeymoon at the time of the attack on Sharikyan, there is no inconsistency between his testimony and that of his mother.

Finally, the IJ noted that Sharikyan testified that her son was unconscious after being beaten and that she needed help bringing him home, while her son testified that he was "sort of conscious" after the beating and that his mother brought him back home alone. The son testified that "[a]ll morning I had lost my consciousness because I had been in that condition in four hours in blood," and when asked whether he was conscious, he said, "[i]t can be said that way." His testimony that he was barely conscious and that his mother was alone does not

4

significantly undermine Sharikyan's testimony that she called her husband for help and that they tried to "wake him up." In any event, this alleged inconsistency does not go to the heart of Sharikyan's claim. In sum, because the IJ's adverse credibility finding is not supported by substantial evidence, "we . . . accept [Sharikyan's] testimony as credible" and grant her petition for review. *Kaur v. Ashcroft*, 379 F.3d 876, 890 (9th Cir. 2004).

## II

The IJ also held, in the alternative, that Sharikyan did not qualify for asylum because, even if her testimony was credible, "the reasons for [her] persecution no longer existed." A petitioner's credible testimony regarding past persecution creates a presumption that the petitioner has a well-founded fear of future persecution. *See Yazitchian v. INS*, 207 F.3d 1164, 1168 (9th Cir. 2000). "[I]n the exercise of his or her discretion," however, the IJ "shall deny the asylum application" if the government establishes "by a preponderance of the evidence" that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution . . . ." 8 C.F.R. § 208.13(b)(1). The BIA has interpreted this regulation to include a "fundamental change" in both personal and country-specific circumstances. *In re Y-T-L*, 23 I. & N. Dec. 601, 604–05 (BIA 2003) (en banc).

5

Here, the government has provided some evidence that Sharikyan's personal circumstances have changed. However, we are uncertain as to whether the BIA addressed this point in its decision. Although in its most recent decision the BIA "adopted and affirmed" the IJ's decision, citing to *Matter of Burbano*, 20 I&N Dec. 872, 874 (BIA 1994), neither in that decision nor in any of the prior two decisions did the BIA make any reference to changed circumstances as an alternative basis for its decision. It is therefore not clear to us that the BIA adopted that portion of the IJ's decision, particularly since if it had, the prior remands to clarify the basis for the IJ's adverse credibility determination might not have been necessary. On remand, the BIA should determine whether, accepting Sharikyan's testimony as credible, Sharikyan is eligible for relief. *See, e.g.*, *Singh v. Gonzales*, 439 F.3d 1100, 1112 (9th Cir. 2006).

GRANTED and REMANDED.