**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



FILED

JAN 24 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

CHUNGUANG JIN,

            Petitioner,

    v.

ERIC H. HOLDER, Jr., Attorney General,

            Respondent.

No. 10-71220

Agency No. A099-407-918

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 15, 2014
San Francisco, California

Before: BYBEE and BEA, Circuit Judges, and RESTANI, Judge.[**]

    Chunguang Jin ("Jin"), a native and citizen of China, petitions for review of

the Board of Immigration Appeals' ("BIA") affirmance of an Immigration Judge's

("IJ") denial of his applications for asylum, withholding of removal, and protection

under the Convention Against Torture ("CAT"). The BIA affirmed the IJ's denial

---

    [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

    [**]    The Honorable Jane A. Restani, Judge for the U.S. Court of
International Trade, sitting by designation.

of relief on adverse credibility grounds and because Jin failed to present corroborating evidence. Because the IJ seriously mischaracterized Jin's testimony, erroneously claiming it was "non-responsive" and thus not credible, and because the IJ did not give Jin proper notice that corroborative evidence was required for him to meet his burden of proof, we grant the petition and remand the case to the BIA.

"Adverse credibility determinations are reviewed under the same substantial evidence standard as findings of fact." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004). We "'must uphold the BIA's finding unless the evidence compels a contrary result.'" *Almaghzar v. Gonzales*, 457 F.3d 915, 920 (9th Cir. 2006) (quoting *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003), *opinion amended on denial of reh'g*, 339 F.3d 1012 (9th Cir. 2003)); *see* 8 U.S.C. § 1252(b)(4)(B).

Under the REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231 (2005), which governs this case, an IJ must provide "specific and cogent reasons supporting an adverse credibility determination," *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010). "[T]rivial inconsistencies that under the total circumstances have no bearing on a petitioner's veracity should not form the basis of an adverse credibility determination." *Id.* at 1044.

2

We have established a clear "sequential analysis" for determining adverse credibility under the REAL ID Act.

> To begin, the IJ must determine whether an applicant's credible testimony alone meets the applicant's burden of proof. If it does, no corroborative evidence is necessary. If a credible applicant has not yet met his burden of proof, then the IJ may require corroborative evidence. If corroboration is needed, however, the IJ must give the applicant notice of the corroboration that is required and an opportunity either to produce the requisite corroborative evidence or to explain why that evidence is not reasonably available.

*Ren v. Holder*, 648 F.3d 1079, 1093 (9th Cir. 2011).

Here, the IJ listed five instances in which Jin "did not directly answer the question posed but rather, testified tangentially on topics of his own choosing." However, a close reading of the record shows that in each instance, Jin responded directly to the posed query.

First, the IJ wrote: "[W]hen the Court asked the respondent how he received the Christian materials, the respondent answered, 'From Korea.'" When the IJ elaborated that he was asking not "where you got it from" but "how you got it," Jin clarified: "They [Korean missionaries] mailed [them] to me because they know I work in the post office and so directly it's mailed to me." Hence, Jin was responsive.

Second, the IJ wrote: "When DHS asked the respondent how many times he was moved from prison to the police station, the respondent answered that 'In the prison, they had a courtyard and an interrogation room too.'" The IJ asked the question in the context of Jin's interrogations, and it appears Jin was explaining that the interrogations could be conducted at the prison and the police station. In response to a follow-up question ("Did they continue to interrogate you at the prison?") Jin clearly said: "[Y]es I was interrogated in the prison's interrogation room. . . . Five times." That was responsive.

Third, the IJ wrote: "When DHS asked the respondent how much was paid for his travel from China to the United States, the respondent answered that his travel was arranged by his uncle." The government attorney followed-up by asking: "Do you know how much he had to pay?" to which Jin replied: "I heard from my wife it's a more around more 20,000 [RMB, about $3,300]" (as in original). That was responsive.

Fourth, the IJ wrote: "When the Court asked the respondent how it was that he could manage to depart China on an official passport when his whereabouts were being sought by [Chinese] Public Security, the respondent answered that he did not apply for his passport himself." Jin explained that he sent photos to a third-party who arranged for him to get a passport and visa from the Malaysian embassy.

4

Jin thought that he was able to slip out of the country because he was from "a very small town in the North. It's far away from Beijing city. At that time, I believe all my information may not be keyed in the system yet." The IJ dismissed this explanation as "mere[] speculation," however, Jin had been asked to speculate about the inner workings of the government. Jin was responsive.

Fifth, the IJ wrote: "[A]fter the respondent testified that he heard from his wife that she was not issued a receipt for the fine she paid on his behalf, the Court asked him how he heard from his wife. The respondent answered that when his wife paid the fine she just signed and did not receive a receipt." A few moments later, Jin said, "My wife told me" that she didn't receive a receipt. That was responsive.

Accordingly, substantial evidence does not support the IJ's finding that Jin was not responsive. *See Ren*, 648 F.3d at 1089; *see also Taiguang Jiang v. Holder*, 532 F. App'x 691, 693 (9th Cir. June 27, 2013) (unpublished).

With regard to corroborative evidence, the IJ faulted Jin for "fail[ing] to present" three pieces of evidence: a statement from his wife or family members "attesting to his experience at the hands of the police" even after Jin said during a hearing that "it would be possible to obtain a statement from his wife in China," a household registration card that would have showed his occupation as a postman,

5

and "any evidence of his medical treatment in China." However, it is not evident from the record that the IJ instructed Jin to provide that material in clear terms or afforded him an opportunity to present it to the court.

Accordingly, "[u]nlike in *Ren*, where the petitioner was told he needed corroborative evidence at his first hearing and then told specifically what evidence he was required to bring at his second hearing, here, [Jin] was never informed that he would need [the] corroborating statement[s]" that the IJ later found wanting. *Kudryashov v. Holder*, 492 F. App'x 734, 738 (9th Cir. 2012) (unpublished); *see Singh v. Holder*, 08-74109, 2013 WL 5814747, at \*1 (9th Cir. Oct. 30, 2013) (unpublished) (applying *Ren* and granting petition where the peititoner "was not afforded notice and an opportunity to respond with evidence or to explain why such corroborating evidence was unavailable").

Hence, we grant the petition for review and remand this case to the BIA for further proceedings to determine whether Jin is eligible for asylum, withholding of removal, and CAT protection. *See INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002) (per curiam).

**PETITION GRANTED.**