**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PATRICIA AUDREY PETERS,
*Petitioner*,

v.

WILLIAM P. BARR, Attorney General,
*Respondent.*

No. 16-73509

Agency No.
A099-872-287

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 13, 2019
Pasadena, California

Filed April 2, 2020

Before: N. Randy Smith and Paul J. Watford, Circuit
Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Watford

---

* The Honorable Edward R. Korman, United States District Judge
for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Immigration

The panel granted Patricia Audrey Peters's petition for review of a Board of Immigration Appeals' decision, holding that Peters remains eligible for adjustment of status because she reasonably relied on her attorney's assurances that he had filed the petition necessary to maintain her lawful status, and therefore, her failure to maintain lawful status was through no fault of her own.

An individual is barred from adjusting status to become a lawful permanent resident if he or she "has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). However, skilled workers such as Peters remain eligible for adjustment of status as long as they have not been out of lawful status for more than 180 days. Peters argued that she fell out of lawful status through no fault of her own because either: 1) her attorney timely filed the necessary petition (as he said he did) and it was misplaced; or 2) the attorney did not file the petition. The immigration judge and BIA rejected that argument, concluding that the statutory phrase "other than through no fault of his own or for technical reasons" was limited by regulation, 8 C.F.R. § 1245.1(d)(2), to four limited circumstances, none of which applied to Peters.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Observing that substantial evidence supported the IJ's finding that the attorney never filed the required petition, the panel concluded that the attorney's failure resulted in Peters's falling out of lawful status, and that her failure to maintain lawful status occurred through no fault of her own. The panel explained that an applicant cannot be regarded as personally responsible for failing to maintain lawful status when that failure occurs due to a mistake on her lawyer's part. Applying *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), the panel held that 8 C.F.R. § 1245.1(d)(2) is invalid to the extent it excludes reasonable reliance on the assistance of counsel from the circumstances covered by the statutory phrase "other than through no fault of his own."

## COUNSEL

Jason A. Orr (argued), O'Melveny & Myers LLP, Los Angeles, California, for Petitioner.

Remi da Rocha-Afodu (argued), Trial Attorney; Mary Jane Candaux, Assistant Director; Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

WATFORD, Circuit Judge:

For nearly 14 years, Patricia Audrey Peters has been stuck in what can only be described as a bureaucratic nightmare. In 2006, her lawyer failed to file the paperwork necessary to obtain an extension of her lawful immigration status. At each stage of the lengthy proceedings below, immigration authorities have ruled that, as a result of her lawyer's mistake, Peters lost her eligibility to become a lawful permanent resident of the United States. We are asked to decide whether the regulation supporting that ruling is consistent with the Immigration and Nationality Act.

I

Peters is a citizen of the United Kingdom who lawfully entered the United States in 2001 on a non-immigrant B-1 visa. Later that year, at her request, United States Citizenship and Immigration Services (USCIS) changed her status to that of an H-1B temporary employee, a non-immigrant classification reserved for skilled workers performing services in a specialty occupation. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b); 8 C.F.R. § 214.2(h)(1)(ii)(B). Peters was initially authorized to work and remain in the United States until November 1, 2004. In December 2003, her employer, Impact Capital Advisors LLC, petitioned to extend her H-1B status until July 15, 2006. USCIS approved the request.

In June 2006, about a month before Peters's H-1B status was set to expire, Impact Capital filed another request to extend her status. David Richmond was the attorney engaged to file the necessary paperwork, known as an I-129 petition. USCIS received the I-129 petition on June 22,

2006. Although all the substantive paperwork was in order, Richmond failed to include two supplemental forms whose submission the agency had recently mandated. Based on this minor paperwork error, USCIS rejected the petition and returned it to Richmond.

USCIS's decision to return the I-129 petition set in motion a series of events that has haunted Peters ever since. The agency decided to return the petition on June 29, 2006, but it did not notify Peters of its decision until September 21, 2006. By then, her H-1B status had expired, and she was no longer lawfully present in the United States. Richmond was responsible for resubmitting the I-129 petition, this time with the required supplemental forms attached. He assured Peters at the time (in late September or early October 2006) that he had done so, and the record discloses no reason for Peters to have doubted the truth of what he told her. Indeed, Richmond later submitted a declaration stating under oath that he promptly refiled a corrected I-129 petition after he learned of the initial petition's rejection.

USCIS claims that it never received the corrected I-129 petition. Thus, the agency never granted Peters an extension of her H-1B status.

When Richmond did not receive confirmation from USCIS that it had received the corrected I-129 petition, he made repeated inquiries of the agency to check on the petition's status. His efforts to find out why the petition had not been processed proved fruitless. Concerned that she was now without lawful status in the United States, Peters wrote to her local members of Congress to see if they could help determine why USCIS had not acted upon her I-129 petition. The president of Impact Capital did the same. None of those efforts bore fruit either.

To avoid similar problems with having to extend her status in the future, Peters decided during this same period to apply for adjustment of status, from that of an H-1B non-immigrant employee to that of a lawful permanent resident. The first step in that process involved Impact Capital's filing an I-140 petition on Peters's behalf, which it did on October 3, 2006. USCIS approved the I-140 petition on June 7, 2007. Richmond thereafter filed Peters's application for adjustment of status on June 26, 2007.

USCIS denied the application. As explained in more detail below, to establish eligibility for adjustment of status, Peters was required to show that she had not been out of lawful immigration status for more than 180 days at the time she filed her application. Peters could not make that showing, the agency concluded, because she fell out of lawful status after July 15, 2006 (when her H-1B status expired), and she did not apply for adjustment of status until almost a year later.

Peters challenged USCIS's denial of her application for adjustment of status by filing an action in federal district court. That action was ultimately dismissed as moot when the Department of Homeland Security commenced removal proceedings against Peters in April 2010. *Peters v. Napolitano*, 565 F. App'x 589 (9th Cir. 2014). After removal proceedings commenced, the immigration judge (IJ) presiding over the proceedings acquired exclusive jurisdiction to decide whether Peters should be granted status as a lawful permanent resident. *See id.*

Peters accordingly reapplied for adjustment of status in her removal proceedings. The IJ denied her application for the same reason USCIS had given. A more detailed explanation of the statutory framework governing that determination follows.

The Immigration and Nationality Act declares certain categories of non-citizens ineligible to become lawful permanent residents, including anyone who has failed to maintain lawful immigration status continuously since entering the United States. The key provision at issue in this case provides that the following individuals are barred from becoming lawful permanent residents: "subject to subsection (k), an alien . . . who is in unlawful immigration status on the date of filing the application for adjustment of status or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status since entry into the United States." 8 U.S.C. § 1255(c)(2). Subsection (k) of § 1255 provides, as relevant here, that skilled workers such as Peters receive something of a grace period: They remain eligible for adjustment of status as long as they have not been out of lawful status for more than 180 days at the time their application is filed. § 1255(k)(2); *see Ma v. Sessions*, 907 F.3d 1191, 1197 (9th Cir. 2018).

In this case, the IJ agreed with USCIS that Peters had been out of lawful immigration status for more than 180 days by the time she filed her application for adjustment of status. The IJ concluded that USCIS properly rejected the initial I-129 petition that Richmond filed in June 2006 because it did not include the required supplemental forms. And the IJ found that Richmond never refiled the corrected I-129 petition as he claimed he had. The IJ relied on the fact that Richmond had no documentary proof of having mailed the corrected petition—not even a copy of the petition itself. (Richmond explained that he did not make a copy of the petition before mailing it because he mistakenly thought his secretary had done so.) Nor did Richmond have a receipt of any sort establishing when and where he had mailed the corrected I-129 petition. Since Peters did not dispute that her H-1B status had expired on July 15, 2006, and that she

did not receive an extension thereafter, the IJ held that she had been out of lawful status for more than 180 days by the time she applied for adjustment of status in June 2007. That fact rendered her statutorily ineligible for relief.

Peters countered this analysis by invoking the parenthetical exception in 8 U.S.C. § 1255(c)(2), which provides that an applicant's failure to maintain lawful immigration status will not bar eligibility if the failure occurred "through no fault of his own or for technical reasons." Peters argued that she fell out of lawful status for more than 180 days through no fault of her own because one of two things occurred: either Richmond timely filed the corrected I-129 petition (as he said he did) and USCIS misplaced it; or, alternatively, Richmond did not file the petition despite assuring Peters that he had done so. Either way, Peters argued, her failure to maintain lawful immigration status occurred through no fault of her own.

The IJ rejected Peters's argument. The IJ relied not on the plain meaning of the statutory phrase "other than through no fault of his own or for technical reasons," but on the definition of that phrase provided in a regulation promulgated by USCIS's predecessor agency. The regulation states that the terms "through no fault of his own" and "for technical reasons" encompass just four limited sets of circumstances, two of which are potentially relevant here:

> (d) Definitions—
>
> *    *    *
>
> (2) *No fault of the applicant or for technical reasons.* The parenthetical phrase *other than through no fault of his or her own or for technical reasons* shall be limited to:

(i) Inaction of another individual or organization designated by regulation to act on behalf of an individual and over whose actions the individual has no control, if the inaction is acknowledged by that individual or organization (as, for example, where a designated school official certified under § 214.2(f) of 8 CFR chapter I or an exchange program sponsor under § 214.2(j) of 8 CFR chapter I did not provide required notification to the Service of continuation of status, or did not forward a request for continuation of status to the Service); or

(ii) A technical violation resulting from inaction of the Service (as for example, where an applicant establishes that he or she properly filed a timely request to maintain status and the Service has not yet acted on that request). An individual whose refugee or asylum status has expired through passage of time, but whose status has not been revoked, will be considered to have gone out of status for a technical reason.

8 C.F.R. § 1245.1(d)(2)(i)–(ii).

The IJ held that Peters failed to show that her case is covered by either of the definitional provisions just quoted. Peters did not fall out of lawful status due to a "technical violation resulting from inaction of the Service," because the IJ had found as a factual matter that Richmond never filed a corrected I-129 petition. Therefore, this was not a case in which an applicant "properly filed a timely request to maintain status and the Service has not yet acted on that request." § 1245.1(d)(2)(ii). Nor could Peters establish that

her case is covered by the first definitional provision, both because Richmond was not an individual "designated by regulation to act" on her behalf, and because he had not "acknowledged" his failure to file the corrected I-129 petition. § 1245.1(d)(2)(i). Instead, he maintained until his death during the pendency of these proceedings that he had in fact filed the corrected petition.

Based on the narrow construction of the statute provided in 8 C.F.R. § 1245.1(d)(2), the IJ held that Peters could not show that her failure to maintain lawful status occurred "through no fault of [her] own or for technical reasons." The IJ refused to address Peters's challenge to the validity of the regulation on the ground that immigration judges lack jurisdiction to resolve such challenges. *See Espinoza-Gutierrez v. Smith*, 94 F.3d 1270, 1273 (9th Cir. 1996).

The Board of Immigration Appeals (BIA) affirmed the IJ's ruling for essentially the same reasons discussed above. Peters has timely petitioned for review of the BIA's decision.

II

We have little difficulty concluding that the BIA's decision must be reversed, but one observation at the outset will help clarify the narrow basis of our holding.

Substantial evidence supports the IJ's finding that Richmond never filed a corrected I-129 petition. To be sure, there is evidence supporting the opposite conclusion, particularly Richmond's sworn statement that he refiled the petition promptly after learning of the initial petition's rejection. But given Richmond's failure to produce any documentary proof that he mailed the petition to USCIS, a reasonable factfinder could choose not to credit his bare

assertion that he refiled the document with the required supplemental forms attached.

The questions before us, then, are twofold:  Did Richmond's failure to file the corrected I-129 petition result in Peters's falling out of lawful immigration status for more than 180 days?  If so, did that occur "through no fault of [her] own" within the meaning of 8 U.S.C. § 1255(c)(2)?  We think the answer to both questions is plainly yes.

The first question does not require extended discussion. No one disputes that Peters could have obtained an extension of her H-1B status beyond July 15, 2006, had she properly requested it.  The failure to properly request the extension is therefore the event that led to her falling out of lawful status. We do not think any inquiry is required into the likelihood that USCIS would have granted the extension had it been properly requested.  But even if such an inquiry were required, the government has provided no basis for believing that the request would have been denied.

The second question requires a somewhat lengthier analysis.  When used in reference to people, the word "fault" means *responsibility* or *blame*.  5 Oxford English Dictionary 768 (2d ed. 1989) ("the blame or responsibility of causing or permitting some untoward occurrence"); Webster's Third New International Dictionary 829 (1986) ("responsibility for wrongdoing or failure").  That is the sense in which "fault" is used in the statutory phrase "other than through no fault of his own."  And the pairing of "fault" with the phrase "of his own" makes evident that Congress intended the parenthetical exception to apply when an applicant is not *personally* to blame for her failure to maintain lawful status. That policy choice strikes us as eminently sensible given the complexity of the laws governing maintenance of lawful immigration status and the ease with which an individual

who is diligently trying to maintain such status can inadvertently fail to do so.

Precisely because the laws governing immigration status are beyond the ken of most lay people, virtually all applicants for adjustment of status will rely to some degree on the assistance of an attorney to ensure that they "maintain continuously a lawful status." 8 U.S.C. § 1255(c)(2). An applicant cannot be regarded as personally responsible for failing to maintain lawful status when that failure occurs due to a mistake on her lawyer's part. An applicant who relies on the assistance of counsel to maintain lawful status will usually have no basis to question the soundness of the advice she receives from her lawyer. *See Pleitez-Lopez v. Barr*, 935 F.3d 716, 720 (9th Cir. 2019); *Monjaraz-Munoz v. INS*, 327 F.3d 892, 897 (9th Cir. 2003). If the advice turns out to be erroneous and results in the applicant's failure to maintain lawful status, no one using the term "fault" in its ordinary sense would say that the applicant herself was to blame. If blame were assigned it would be placed on the attorney, whose job it is to know the intricacies of immigration law.

What little authority we have construing § 1255(c)(2) supports this reading of the statute. Several district courts have grappled with the meaning of the phrase "other than through no fault of his own or for technical reasons." Each has concluded—correctly in our view—that the phrase encompasses circumstances in which an applicant's failure to maintain lawful status results from her reasonable reliance on the erroneous advice of counsel. *See Evangelista v. Johnson*, 2015 WL 12683978, at *4–5 (D. Mass. Oct. 30, 2015); *Wong v. Napolitano*, 2010 WL 916274, at *12–15 (D. Or. Mar. 10, 2010); *Alimoradi v. U.S. Citizenship & Immigration Services*, 2009 WL 8633619, at *5–6 (C.D. Cal. Feb. 10, 2009). As the court stated in *Wong*: "Given that

immigration law is nearly impenetrable for a lay person and at times is uncertain, a reasonable and good faith reliance on the advice of counsel is a permissible basis for concluding that an alien was not at fault." 2010 WL 916274, at *14.

Although we do not have Ninth Circuit precedent directly on point, case law interpreting an analogous provision of the Immigration and Nationality Act is instructive. A provision of the Act governing *in absentia* removal orders states that non-citizens who fail to appear at a scheduled hearing and are ordered removed *in absentia* can seek to reopen their proceedings if "the failure to appear was because of exceptional circumstances." 8 U.S.C. § 1229a(b)(5)(C)(i). The statute defines the term "exceptional circumstances" to mean "*exceptional circumstances* (such as battery or extreme cruelty to the alien or any child or parent of the alien, serious illness of the alien, or serious illness or death of the spouse, child, or parent of the alien, but not including less compelling circumstances) *beyond the control of the alien*." § 1229a(e)(1) (emphasis added).

We have held that failing to appear at a hearing due to reasonable reliance on the erroneous advice of counsel constitutes an exceptional circumstance "beyond the control of the alien." In *Monjaraz-Munoz v. INS*, 327 F.3d 892 (9th Cir. 2003), the petitioner failed to appear at his hearing because he had been advised by his attorney to travel to Mexico the day before the hearing in order to validate his visa, only to be detained at the border and denied readmission into the United States. *Id.* at 894–97. We concluded that "if Monjaraz did in fact fail to appear at his hearing because he relied on the negligent advice of his attorney's agent that he travel to Tijuana the day before his

hearing, this would constitute an exceptional circumstance beyond Monjaraz's control." *Id.* at 897.

Our decision in *Monjaraz-Munoz* addresses a different section of the Immigration and Nationality Act, but it is nonetheless instructive because the purpose served by the "exceptional circumstances" provision is similar to the purpose underlying the "other than through no fault of his own" provision.  Both reflect Congress's desire to avoid penalizing non-citizens who have diligently attempted to follow the rules but fail in that effort due to circumstances for which they cannot fairly be deemed responsible.  In both contexts, when reasonable reliance on an attorney's erroneous advice results in an applicant's failure to take action that the law requires, non-compliance is excused because the applicant is not to blame.

That brings us to the regulation, 8 C.F.R. § 1245.1(d)(2), upon which both the IJ and the BIA relied in issuing their decisions.  Peters contends that the regulation is an impermissibly narrow interpretation of the statute.  Applying the two-step framework established in *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), we agree that the regulation is invalid to the extent it excludes reasonable reliance on the assistance of counsel from the circumstances covered by the statutory phrase "other than through no fault of his own."  8 U.S.C. § 1255(c)(2).  As explained above, we do not think that phrase can be read as suggesting that Congress intended to hold non-citizens responsible for mistakes made by their lawyers. The key consideration is whether the non-citizen's reliance on her lawyer's assistance was *reasonable* under the circumstances—not whether the lawyer was "designated by regulation to act on [her] behalf," or whether the lawyer is someone "over whose actions the [non-citizen] has no

control," or whether the lawyer has "acknowledged" his inaction.    8 C.F.R. § 1245.1(d)(2)(i).    Each of those limitations is inconsistent with the statute when applied in the context at issue here.  When a non-citizen's failure to maintain lawful status results from her reasonable reliance on the assistance of counsel, nothing more is needed to show that the failure has occurred "through no fault of [her] own."

We find it unnecessary to decide whether the regulation is invalid to the extent just stated at step one of the *Chevron* analysis or instead at step two.  The answer to that question depends solely on how broadly or narrowly one frames the interpretive question posed by this case.  If the question is framed narrowly—whether reasonable reliance on the assistance of counsel constitutes a circumstance covered by the statutory phrase "other than through no fault of his own"—the regulation is invalid at step one because it conflicts with "the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.  If the question is framed more broadly—whether the phrase "other than through no fault of his own" is itself ambiguous—the regulation is invalid at step two because the agency's attempt to define that phrase to exclude reasonable reliance on the assistance of counsel is an impermissibly narrow construction of the statute. *See id.* at 843.

Resolution of this appeal does not require us to declare the regulation invalid in its entirety.  It is enough to hold, as we do today, that 8 C.F.R. § 1245.1(d)(2)(i) is invalid to the extent it excludes reasonable reliance on the assistance of counsel from the circumstances covered by the phrase "other than through no fault of his own."

The IJ erred by denying Peters's application for adjustment of status on the ground that she is ineligible for such relief under 8 U.S.C. § 1255(c)(2).  Peters reasonably

relied on Richmond's assurances that he had filed the corrected I-129 petition necessary to maintain her lawful immigration status. She remains eligible for adjustment of status because her failure to maintain lawful status continuously since entering the United States occurred through no fault of her own. We grant Peters's petition for review and remand the case to the BIA so that it may address in the first instance the alternative ground on which the IJ denied Peters's application.

**PETITION FOR REVIEW GRANTED.**