## NOT FOR PUBLICATION

### UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

IVAN SANCHEZ-ARCE,

Petitioner,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 20-71935

Agency No. A208-937-987

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 9, 2021
Pasadena, California

Before: COLLINS and LEE, Circuit Judges, and BAKER,[**] Judge.

Ivan Sanchez-Arce, a citizen and native of Mexico, petitions for review of

the decision of the Board of Immigration Appeals ("BIA") affirming the order of

the Immigration Judge ("IJ") denying his application for deferral of removal under

the Convention Against Torture ("Torture Convention"). We have jurisdiction

under § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252. We

review the agency's factual findings for substantial evidence. *Monjaraz-Munoz v.*

---

[*] This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

[**] The Honorable M. Miller Baker, Judge for the United States Court of
International Trade, sitting by designation.

*INS*, 327 F.3d 892, 895 (9th Cir. 2003). Under this standard, the agency's factual findings must be upheld unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020) (holding that this same substantial-evidence review standard applies to Torture Convention claims). We deny the petition.

1. Sanchez contends that the agency failed to give appropriate evidentiary weight to the testimony of his country-conditions expert, Dr. Jeremy Slack. We disagree.

As an initial matter, we need not decide whether Sanchez is correct in contending that the credibility standards set forth in INA § 208 apply as a formal matter to applications for deferral of removal under the Torture Convention. *See* 8 U.S.C. § 1158(b)(1)(B)(iii) (listing factors on which credibility determinations may be based in the asylum context); *id*. § 1231(b)(3)(C) (applying the same standards to determinations concerning withholding of removal). Even assuming that they do not, the agency nonetheless properly weighed the credibility and persuasiveness of Dr. Slack's testimony using appropriate and common-sense considerations, such as whether his expert opinions contained inaccuracies or reflected sufficient familiarity with the circumstances of Sanchez's case. *See Matter of D-R-*, 25 I. & N. Dec. 445, 460 n.13 (BIA 2011) ("An Immigration Judge who finds an expert witness qualified to testify may give different weight to the

2

testimony, depending on the extent of the expert's qualifications or based on other issues regarding the relevance, reliability, and overall probative value of the testimony as to the specific facts in issue in the case.").

Substantial evidence supports the IJ's assessment that Dr. Slack's opinions were entitled to "significant, but less than full, evidentiary weight." As the IJ explained, "Dr. Slack's declaration contained multiple errors about the extent of Respondent's cooperation with law enforcement officials in the United States, indicating that Dr. Slack was either unfamiliar with the facts of this case or careless in his evaluation and description of the facts in the record." Sanchez contends that this assessment is contrary to the record, which reveals only a "single error," namely that Dr. Slack had stated that Sanchez had cooperated with authorities. But Dr. Slack's report repeated this error in at least three different places, even stating at one point—incorrectly—that Sanchez had testified in open court. And contrary to what Sanchez contends, the IJ did not "discard[] entirely" Dr. Slack's opinions. The IJ's discussion of Sanchez's Torture Convention claim affirmatively quotes from Dr. Slack's report with respect to one point concerning the history of the relevant criminal cartels in Mexico, but the IJ clearly did not find Dr. Slack's testimony to be persuasive when it came to assessing the extent of the individualized risk of torture that *Sanchez* would face. Given that the latter point was the issue as to which Dr. Slack had made multiple errors in his report, we

3

cannot say that the IJ's assessment of the testimony was improper. *See Garland v. Ming Dai*, 141 S. Ct. 1669, 1677 (2021) (stating that, under the substantial evidence standard, "a reviewing court must be mindful too that the agency, like any reasonable factfinder, is free to credit part of a witness' testimony without necessarily accepting it all") (simplified).

2. Substantial evidence supports the agency's ultimate conclusion that Sanchez had failed to establish that he was entitled to deferral of removal under the Torture Convention.

To qualify for such relief, Sanchez must show that "it is more likely than not that he . . . would be tortured" if removed to Mexico. 8 C.F.R. § 1208.16(c)(2). Sanchez's theory was that, if he were removed to Mexico, a specific cartel would torture him due to its suspicion that Sanchez had cooperated with authorities in connection with a murder he witnessed that was committed in Washington by members of the predecessor cartel. The IJ concluded that Sanchez's risk of harm from the relevant cartel was speculative, because (1) Sanchez had not testified or cooperated with the authorities in Washington; (2) Sanchez's family members in Mexico had not been contacted or threatened; (3) cartel members had asked Sanchez to assist their drug trafficking, which suggested that the cartel did not view him as "a threat or a security risk"; (4) the actual perpetrators of the murder had been prosecuted; and (5) Sanchez had not been harmed. With respect to each

of these considerations, Sanchez presents reasonable arguments as to why the IJ should have assessed them differently.  But "[o]ur task is to determine whether there is substantial evidence to support the [agency's] finding, not to substitute an analysis of which side in the factual dispute we find more persuasive." *Marcu v. INS*, 147 F.3d 1078, 1082 (9th Cir. 1998); *see also Don v. Gonzales*, 476 F.3d 738, 744 (9th Cir. 2007) (upholding agency's decision as supported by substantial evidence, noting that the IJ was not required to "interpret the evidence in the manner advocated" by the alien).  On this record, we cannot say that "any reasonable adjudicator would be compelled to conclude" that Sanchez would likely be tortured if removed to Mexico.  8 U.S.C. § 1252(b)(4)(B).

**PETITION DENIED.**